UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LYNISHA REFF, LYNDON RED, SR., TRACY HARRIS, AND LYSCHINE WILLIAMS | CIVIL ACTION |
| | NO. 2:18-cv-08350 |
| VERSUS | |
| | JUDGE:  MARTIN L. C. FELDMAN |
| WERNER ENTERPRISES, INC., JAKIE BROWN, AND | MAGISTRATE:  JANIS VAN MEERVELD |
| ACE AMERICAN INSURANCE COMPANY | |

<u>**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE OF COURT TO FILE COUNTERCLAIM AND SUPPLEMENTAL AND AMENDING ANSWER**</u>

NOW INTO COURT, through undersigned counsel, comes Defendant, Werner Enterprises, Inc., who files this Reply Memorandum in support of its Motion for Leave of Court to File Counter Claim and Supplemental and Amending Answer (Rec. Doc, 8).   The claims raised in Defendant's Proposed Counter Claim were timely filed and not prescribed.   The Proposed Counter Claim and Supplemental and Amended Answer satisfy the pleading requirements for fraud.

**I.      The Fraud Claim Raised in Defendant's Counter Claim Are Not Prescribed**

"Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained.  La. C.C. Art. 3492.

> Under article 3492, prescription in actions arising ex delicto commences on the day actual and appreciable damage is sustained. The doctrine of *contra non valentum* prevents the running of liberative prescription where the cause of action is not known or reasonably knowable by the plaintiff. Damage is considered to have been sustained, within the meaning of the article, only when it has manifested itself with sufficient certainty to support accrual of a cause of action.

*Aetna Cas. & Sur. Co. v. Stewart Const. Co.*, 00-1332 (La. App. 5 Cir. 2/28/01), 780 So. 2d 1253, 1256–57 (*citing Cole v. Celotex Corp.*, 620 So.2d 1154 (La.1993); *Smith v. Mine Safety*

*Appliances*, 93–706 (La.App. 5th Cir.1/25/94), 631 So.2d 1251, *writ denied* 94–0965 (La.6/17/94) 638 So.2d 1094).

Prescription on the claims raised in Defendant's proposed Counter Claim (Rec. Doc. 8-5) did not begin to run on September 4 2017, when the alleged accident occurred, or when counsel for the plaintiffs sent Defendant a letter of representation on September 11, 2017. 1) The cause of action for fraud was not known or reasonably knowable in September 2017; and 2) No damage to Defendant had been sustained in September 2017.

**A. The Cause of Action for Fraud was not Reasonably Knowable Until Defendant Investigated the Accident and Parties Involved**

A disagreement between two drivers about whether an accident occurred and notice that one party is represented by counsel – mere notice of a potentially wrongful act – does not commence the running of the prescriptive period for fraud because there is insufficient information to state a cause of action for fraud.  Plaintiffs dedicated multiple pages of their opposition memorandum to the strict requirements for fraud claims, including detailed descriptions of the elements for fraud and the heightened pleading requirements under Federal Rule of Civil Procedure 9(b).  As the plaintiffs state, "Rule 9(b) requires 'the who, what, when, where, and how' to be laid out."  (Rec. Doc. 9).   The who, what, where, when and how of the fraud was not reasonably knowable on September 4, 2017 when the alleged accident occurred, or seven days later when plaintiffs' counsel sent a letter of representation.  The who, what, where, when and how of the fraud only became reasonably knowable during the course of Defendant's investigation of the alleged accident and the parties involved.

"Prescription does not run if the cause of action has not established itself with sufficient certainty to be susceptible of proof in a court of justice."  *Nat'l Union Fire Ins. Co. of*

2

*Pennsylvania v. Spillars,* 552 So. 2d 627, 630 (La. Ct. App. 1989), *writ denied,* 556 So. 2d 61 (La. 1990), and *writ denied,* 556 So. 2d 61 (La. 1990).

At the earliest, the cause of action for fraud became reasonably knowable on October 29, 2018, when undersigned counsel for Defendant received information from its investigator providing background information about the plaintiffs, their vehicle, and their connections to other accidents with similar factual scenarios to the alleged accident at issue. That information was used to prepare the proposed Counter Claim. On its face, the allegations of the Counter Claim show the cause of action became reasonably knowable after an investigation – not in September 2017.[1]   The Counter Claim was filed within three months of Defendant's receipt of the information from its background investigator and well within the one year prescriptive period. The investigation is ongoing.

*Spillars*, *supra*, concerned an exception of prescription under the one year period set forth under La. C.C. Art. 3492. National Union filed suit against Spillers and Hodge to recover proceeds paid on a policy against embezzlement, alleging Spillers and Hodge engaged in a

---

[1] a.      Paragraphs 1, 2 and 5 of the Counter Claim identify the parties to the Counter Claim and the factual allegations made by the plaintiffs in the original complaint.
b.      Paragraphs 3 and 4 of the Counter Claim include new facts discovered in Defendant's investigation regarding prior and subsequent accidents involving the vehicle occupied by the plaintiffs and pre-existing damage to the plaintiffs' vehicle.
c.      Paragraph 6 of the Counter Claim describes evidence uncovered during Defendant's investigation of more than 30 other accidents with similar factual scenarios to the alleged accident at issue.
d.      Paragraphs 7 through 10 of the Counter Claim describe factual connection between the plaintiffs in the instant suit and the other accidents described in Paragraph 6.
e.      Paragraph 11 of the Counter Claim asserts claims under La. C.C. art 1953. As stated in Paragraph 11, those claims are premised on evidence detailed in the prior paragraphs, which was discovered in the course of Defendant's investigation.
f.      Paragraph 12 of the Counter Claim asserts Defendant's belief that additional investigation will uncover additional evidence of misrepresentations.
g.      Paragraph 13 of the Counter Claim asserts claims that the plaintiffs were aware of the similar claims referenced in Paragraph 6, uncovered during the course of Defendant's investigation.
h.      Paragraph 14 of the Counter Claim asserts Defendant suffered damages as a result of the fraudulent activity discovered during the course of Defendant's investigation.

scheme to charge the insured, Howard Distribution Center, for parts that were not delivered.  The trial court overruled the exception of prescription and the judgment was affirmed on appeal.

The facts, as outlined in the *Spillars* opinion, show suspicions of fraudulent conduct first arose in November 1984, after Howard's Director of Loss Prevention received an anonymous phone tip.  An investigation began at that time.  The Sheriff's Office was notified three months later on February 18, 1985.  Hodge was intervened on February 25, 1985 and gave a statement to the district attorney on February 26, 1985 admitting in general terms to a conspiracy to misappropriate funds.  That same day, Spillers signed two statements admitting he had an agreement with Hodge and that most charges billed to Howard were not legitimate – invoices were submitted and paid by Howard, but not parts were delivered.  National Union filed suit 363 days after the statements were obtained from Hodge and Spillers, on February 24, 1986.  The *Spillars* Court rejected Hodge's and Spillers' argument that the tortious acts occurred and were discovered by Howard more than a year before suit was filed, finding that Howard "discovered *facts* sufficient to entitle it to bring suit only on February 26, 1985, after questioning Hodge and Spillers and receiving their statements. Prior to this time, plaintiff had mere suspicions."  *Id.* at 631 *(emphasis* in original).

The rational in the instant suit is analogous.  The fact that the plaintiffs alleged an accident occurred, while Mr. Brown denied any accident, is insufficient on its own to give rise to a claim for fraud.  The who, what, when and how requirements where not reasonably knowable.  The cause of action only became reasonably knowable after an investigation.  The claims asserted in Defendant's Cross Claim have not prescribed and leave should be granted to allow Defendant to file its Cross Claim.

**B.  Prescription Did Not Begin to Run Until Damages were Sustained by Defendant**

Even if the plaintiffs could meet their burden to prove Defendant should have reasonably known about the plaintiff's fraudulent activity in September 2017, the fraud claims would not be prescribed, because Defendant did not sustain any damages in September 2017 and prescription does not begin to run until damages are sustained.

> Mere notice of a wrongful act will not suffice to commence the running of the prescriptive period. The reason is clear. In order for the prescriptive period to commence, the plaintiff must be able to state a cause of action—both a wrongful act and resultant damages. Because the damage must necessarily occur after the wrongful act, prescription runs from that point and not from the date of the wrongful act.

*Rayne State Bank & Tr. Co. v. Nat'l Union Fire Ins. Co.*, 483 So. 2d 987, 995 (La. 1986).

Defendant's proposed Counter Claim seeks damages "including but not limited to, attorney's fees and litigation expenses in association with the investigation and defense of this action." (Rec. Doc. 8-5, ¶ 14).  The damages sustained by Defendant, and any damages which may be sustained in the future, were not sustained on the date of the alleged accident, September 4, 2017.  Nor were those damages sustained when counsel for the plaintiffs sent Defendant a letter of representation dated September 11, 2017.  The damages were sustained and have continued since plaintiff's filed the instant suit on August 31, 2018, causing Defendant to incur attorney's fees and litigation expenses in association with the investigation and defense of this action.

The Louisiana Supreme Court addressed a similar issue in *Rayne, supra*. *Rayne* involved an exception of prescription in a legal malpractice claim arising out of defective mortgages.  The defective mortgages were executed in January 1979 and the bank, Rayne, received notice of potentially fatal defects in March 1980.  In November 1980, the mortgagees informed Rayne that the mortgages were defective and threated to file for bankruptcy if the bank refused to lend

additional money.  The bank refused.  In January 1981, the mortgagees filed for Chapter 11 bankruptcy and adversary proceedings were filed against Rayne to invalidate the mortgages. Rayne filed third party complaints alleging malpractice in the bankruptcy court in April 1981. The Louisiana Supreme Court ruled damages were not sustained until the adversary proceedings were filed in the bankruptcy court in January 1981, so the third party complaint was timely.

> Damage was not sustained by the bank by virtue of the mere existence of defects in the mortgages. At this point, the possibility of damage to the bank was merely speculative, uncertain and contingent on the possibility of an attack on the validity of the mortgages by a third party, or on the possibility that the debtors would declare bankruptcy. In the event that neither of these contingencies occurred, and the debtors continued payment of their indebtedness, no harm at all would have resulted to the bank . . .Until the debtors in possession, who were vested with the avoidance powers of a trustee in bankruptcy thus becoming in effect third parties to the loans, attacked the mortgages and sought to have them declared invalid, the possibility of damage to the bank resulting from the defects in the mortgages was speculative, not capable of ascertainment, and certainly not susceptible of proof in a court of law.

*Rayne State Bank & Tr. Co. v. Nat'l Union Fire Ins. Co.*, 483 So. 2d 987, 995–96 (La. 1986).

As in *Rayne*, and damages to Defendant in the instant suit were merely speculative in September 2017.  No harm would have resulted if no suit was filed.  Damages were sustained after suit was filed.  Those are the specific damages alleged in the Counter Claim: attorney's fees and litigation expenses in association with the investigation and defense of this action.  (Rec. Doc. 8-5, ¶ 14).

## II.    The Counter Claim and Supplemental and Amended Answer Meet the Pleading Requirements for Fraud

A nearly identical issue was previously decided by Magistrate Judge Dana Douglas, on January 28, 2019 in *Clark v. Jiri Janda, et al,* 2:18-cv-05076-MVL-DMD, allowing leave to file a counter claim and supplemental and amended answer and specifically finding that the pleading requirements for fraud were met.  A copy of the Order is attached as Exhibit A.  The parties in

*Clark* were represented by the same counsel as in the instant suit and *Clark* involves one of the 30 other accidents with similar factual scenarios to the alleged accident at issue in the instant suit.  As a result of its investigation in *Carter*, Werner discovered evidence of fraud and filed a motion for leave to file a counter claim to assert claims for fraud and amend it answer to add an affirmative defense concerning fraud.

> Judge Douglas explained her ruling as follows:
>
> This Court has reviewed the eighth affirmative defense and the proposed counterclaim and finds that they satisfy Rule 15 at this time. The counterclaim alleges that Janda experienced no vehicular impact on the day of the alleged accident and that there was no damage to either Janda's or Clark's vehicle. It alleges that Werner has discovered through investigation that there have been 30 "similar" accidents that have resulted in litigation against insurance companies. It outlines the details of the alleged scheme to defraud insurance companies by faking accidents, *i.e.*, how the plaintiffs perpetrated the alleged fraudulent accidents. Werner also includes a detailed chart that delineates the plaintiffs in all of the similar lawsuits, counsel for plaintiffs in those lawsuits, when the accidents allegedly occurred, where they occurred, and what circumstances caused the underlying accidents. The chart lists 21 of these "similar" accidents. The counterclaim ultimately alleges that plaintiff here and those in the other 20 lawsuits have fraudulently misrepresented the occurrence of the underlying vehicular accidents in order to defraud the insurance companies.
>
> The counterclaim and the accompanying affirmative defense are sufficient under Rule 15. The allegations are detailed enough to fairly apprise Clark of the claims against him. Clark cannot cry prejudice here given that he has adequate time within which he can complete discovery before the discovery deadline of April 19, 2019. This Court cannot say at this time – especially under the liberal standard of Rule 15 – that the counterclaim fails to state a claim to relief that is plausible 7 on its face. That is more appropriately the subject of a motion before the District Court after the parties have conducted some discovery on their claims.

Exhibit A, p. 6.

This Honorable Court considered a similar issue in *Frazier v. Runnels, et al.* 2:18-cv-02340-ILRL-JVM, denying the plaintiffs' motion to strike an amended petition raising fraud claims. Attached as Exhibit B. That suit also involved one of the 30 other accidents with similar factual scenarios to the alleged accident at issue in the instant suit.  Your Honor ruled:

Here, Defendants have satisfied the requirements of Rule 9(b). The alleged misrepresentation is the assertion by Plaintiffs that they were injured in a motor vehicle accident on November 13, 2017. This assertion has been made by the Plaintiffs in their Complaint and they stand by that assertion to this day. In support of their position that Plaintiffs made these alleged misrepresentations with the intent to deceive, Defendants allege that similar accidents have been suffered by relatives of Tiffany Turner who were represented by the same attorney who pursued other, similar claims on behalf of other plaintiffs and that Tiffany Turner has previously made questionable insurance claims and has been convicted of forgery. This, they argue, supports an inference of fraud. And indeed, if Defendants are correct, the Plaintiffs have made the misrepresentations in their Complaint in an attempt to collect damages from the Defendants for an incident that did not occur or was staged. In being forced to defend Plaintiffs' purportedly false claims, Defendants allege they have suffered damages in the form of attorneys' fees.

Exhibit B, at p. 7.

For the same reasons articulated by Judge Douglas and Your Honor, the Rule 9(b) pleading requirements were met in the instant suit and the requirements of Rule 15 were also satisfied. The Defendant's Motion for Leave should be granted.

## III.     CONCLUSION

The claims set forth in Defendant's proposed Counter Claim are not prescribed. The cause of action for fraud was not known or reasonably knowable in September 2017 and Defendant had not sustained damage in September 2017. Prescription did not begin to run until after suit was filed and Defendant discovery evidence of fraud during its investigation. Further, the fraud claims set forth in the proposed Counter Claim and affirmative defense asserted in the Supplemental and Amended Answer describe the fraud with particularity, satisfying the pleading requirement. Defendant respectfully requests that the Court grant its Motion for Leave to file the Counter Claim and Supplemental and Amended Answer.

**WHEREFORE**, Defendant, Werner Enterprises, Inc., prays that the motion be deemed good and sufficient and that leave to allege a counterclaim and to include the affirmative defense be granted.

Respectfully submitted,

*/s/ Guy D. Perrier*

<table>
<tr><td>

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing pleading has been delivered to all counsel of record through the Court's CM/ECF system this **8th** day of **February**, **2019**, at their last known address of record.

*/s/ Guy D. Perrier*
_____
**GUY D. PERRIER**

</td><td>

**GUY D. PERRIER, #20323**
**RALPH J. AUCOIN, JR. #31023**
**PERRIER & LACOSTE, LLC**
One Canal Place
365 Canal Street, Suite 2550
New Orleans, Louisiana  70130
Tel:  (504) 212-8820;
Fax:  (504) 212-8825
Email: gperrier@perrierlacoste.com
Email: raucoin@perrierlacoste.com
**ATTORNEYS FOR DEFENDANT,**
*Werner Enterprises, Inc.*

</td></tr>
</table>